IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEVEN MACALUSO, ) | |
|     Plaintiff, ) | |
| ) | Case No. 15 CV 1739 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| CITY OF CHICAGO, et al., ) | |
|     Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Steven Macaluso sued the City of Chicago, two City detectives (Joseph Struck and Pamela Childs), and four John Doe officers pursuant to 42 U.S.C. § 1983, alleging federal and state claims based on his arrest and the denial of access to prescription medication. He also contends that the City has a policy, practice, or custom of denying detainees access to prescription medication and inadequately trains its officers about this issue. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). The City seeks to dismiss Macaluso's *Monell* claim pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that it is conclusory. Alternatively, the City argues that Macaluso's allegations do not show that he suffered a harm that rises to the level of a constitutional injury. For the following reasons, the court grants the City's motion but will allow Macaluso to replead.

### I. FACTS

The court draws the following facts from Macaluso's complaint and accepts them as true for purposes of the motion to dismiss. *See Cincinnati Life Ins. Co. v. Beyrer,* 722 F.3d 939, 946 (7th Cir. 2013). In February 2015, as Macaluso left a hearing in a divorce case at the Will County Courthouse where he was proceeding pro se, two unknown City of Chicago police officers arrested him for an unspecified reason and handcuffed him. (Compl. ¶¶ 8-10, Dkt. 1.)

As the officers transported him to the local police station, Macaluso told them about his "serious medical conditions and physical disabilities that required a daily medication regiment [sic]." (*Id*. ¶ 11.) Although the officers allowed Macaluso to retrieve his insulin from his vehicle, they refused to transport him to his home so he could retrieve the rest of his medications.

According to Macaluso, the officers locked him in a room at the station for "several hours" and denied him access to an attorney, medication, medical attention at a hospital, use of the restroom, and food and water. (*Id*. ¶ 13.) An officer later provided him with a small cup of water but refused to allow him to use the bathroom, forcing him to urinate into the cup. Eventually, at an unspecified time, Macaluso was taken to the hospital where he received medical care, his medications, and food and water.

On the way back to the station, the officers placed Macaluso (who was handcuffed and in leg shackles) in the backseat of a squad car and ignored Macaluso's request to fasten his seat belt. The car was in an accident, causing Macaluso to experience "a classic 'whiplash' type of action" as he was thrown backwards into his seat and then forward into the car's metal divider. (*Id*. ¶ 22.) Macaluso was taken back to the hospital by ambulance but a John Doe officer refused to loosen Macaluso's handcuffs, despite Macaluso's complaints about his recent hand surgery.

Several hours later, without explanation and after approximately fourteen hours of detention, an officer told Macaluso that he could leave the hospital, leaving him "stranded in the middle of the night with no money or means to get home in a Chicago neighborhood that was foreign to him." (*Id*. ¶ 24.) Macaluso called his elderly mother, who arranged a taxi for him. He asserts that the officers caused him "extreme physical and emotional pain and suffering . . . including but not limited to head and neck pain, bruising, lacerations and pain and discomfort to

his wrists" and that he sought medical treatment for "possible nerve damage" to his wrists. (*Id*. ¶¶ 26-27.)

In his nine-count complaint, Macaluso alleges that the individual officers falsely arrested and unlawfully detained him (Count I), were deliberately indifferent to his objectively serious medical needs (Count II), used excessive force and failed to intervene in an unlawful search and seizure (Count IV), falsely imprisoned him (Count V), battered him (Count VI), and negligently or willfully failed to secure him with a seat belt (Count VII). Macaluso further alleges that the City is liable for the actions of its officers based on *Monell* (Count III) and a state law theory of respondent superior (Count VIII), and must indemnify the individual defendants if they are found liable (Count IX).

## II.  LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). For purposes of a motion to dismiss, the court takes all facts alleged by the plaintiff as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

## III. DISCUSSION

Section 1983 provides a cause of action against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. A municipality is liable under § 1983 "when execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. 658, at 694. Municipal liability can rest on: (1) an express policy that caused the constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled that it constitutes a policy; or (3) that the constitutional injury was caused by a person with final policymaking authority. *Lewis v. City of Chi.*, 496 F.3d 645, 656 (7th Cir. 2007).

To survive a motion to dismiss a *Monell* claim, a plaintiff must "plead facts that show 'that there is a true municipal policy at issue, not a random event. If the same problem has arisen many times and the municipality has acquiesced in the outcome, it is possible (though not necessary) to infer that there is a policy at work.'" *Liska v. Dart*, No. 13 C 1991, 2014 WL 3704635 at *10 (N.D. Ill. July 23, 2014). To meet this standard, the plaintiff must "'provide some specific facts' to support the legal claims asserted in the complaint." *Brown v. Dart*, No. 14-CV-07945, 2015 WL 4035568, at *2 (N.D. Ill. June 30, 2015) (citing *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). There is no bright-line rule for determining when conduct rises to the level of policy or practice but "it is clear that a single incident—or even three incidents—do not suffice." *Wilson v. Cook Cnty.,* 742 F.3d 775, 780 (7th Cir. 2014); *see also Nettles-Bey v. Burke,* No. 11 C 8022, 2015 WL 4638068, at *12 (N.D. Ill. Aug. 4, 2015)

("Isolated incidents of allegedly unconstitutional conduct are insufficient to establish a widespread practice."); *Palka v. City of Chicago,* 662 F.3d 428, 435 (7th Cir. 2011) ("two alleged instances of discrimination do not constitute a widespread pattern or practice sufficient to subject the City to liability").

In Count III, Macaluso alleges that the City is liable under *Monell* based on its purported policy or practice of (1) denying detainees access to their medication and (2) inadequately training officers about the needs of detainees who take prescription medication and have serious medical conditions. The City seeks to dismiss Count III in its entirety, arguing that Macaluso's allegations about the City's purported policies and practices are conclusory. Alternatively, the City argues that the complaint fails to show that the alleged policies and practices caused Macaluso to suffer a harm that rises to the level of a constitutional injury.

**A.     The City's Alleged Policy or Practice of Denying Medication to Detainees**

A denial of medication claim under *Monell* must be supported by sufficient facts. *See Klein v. Curran*, No. 13 CV 5191, 2014 WL 5023486, at *3 (N.D. Ill. Oct. 7, 2014) (holding that a complaint with no factual allegations supporting an inference "of the existence of a policy to deny needed medical care" was inadequate). Macaluso generally references an alleged policy or practice of denying medication to detainees with serious medical needs. Specifically, he alleges that the individual defendants "failed to provide him with necessary medical attention, and more specifically medication." (Compl. ¶ 39, Dkt. 1.) According to Macaluso, these defendants acted "pursuant to one or more interrelated de facto policies, practices, and/or customs of the Defendant City of Chicago and its police department." (*Id.* ¶ 40.) However, he provides no factual allegations suggesting that a widespread policy or practice exists and was the moving force behind the purported violation of his constitutional rights.

-5-

In addition, factual allegations that are "highly specific" to a single plaintiff do not "plausibly support the inference of a widespread, permanent, and well-settled policy." *Schlessinger v. Chicago Hous. Auth.,* No. 12 C 3733, 2013 WL 2434704, at *6 (N.D. Ill. June 3, 2013). Here, the complaint does not offer any facts suggesting that the City carried out its alleged policy or practice by improperly denying medication to other detainees.

Macaluso nevertheless contends that his allegations about a custom or practice of denying medication should survive the City's motion to dismiss because he sufficiently described the City's challenged policy or practice. In support, he directs the court's attention to *Otero v. Dart*, No. 12 C 3148, 2012 WL 5077727 (N.D. Ill. Oct. 18, 2012). In that case, the court denied the City's motion to dismiss, holding that the plaintiff had "sufficiently describe[d] the policy or practices at issue" by alleging that the defendants had a policy or practice of unlawfully placing acquitted inmates in the general population at the Cook County Jail. *Id*. at *3-4. As the *Otero* court explained, the plaintiff's allegations were specific and "amount[ed] to more than just boilerplate language reciting the elements of the offense" so the plaintiff "sufficiently apprised Defendants of the allegedly unconstitutional policy or custom, and . . . alerted Defendants to the nature of his claim." *Id*. at *4.

In contrast, in this case, the complaint's allegations suggest that Macaluso's purported experience was specific to him, as his broadly described alleged policy or practice of denying medication tracks the treatment he purportedly received. The basis for his claim that a policy or practice existed appears to be his belief that if his rights were violated, the rights of others must also have been violated. However, "[i]n the absence of any facts beyond those relating to his specific experience," a plaintiff has "pled, at best, conduct that is 'consistent with' the policies he describes." *See Nowack v. Warner*, No. 15 C 414, 2015 WL 3862729, at *3 (N.D. Ill. June

22, 2015) (citation omitted). This is not enough to allege that a policy or practice in fact existed. Thus, *Otero* does not help Macaluso. *See White v. City of Chicago*, No. 11 C 7802, 2014 WL 958714, at *3 (N.D. Ill. Mar. 12, 2014) (distinguishing *Otero* and dismissing a *Monell* claim based on the City's alleged "widespread practice" of requesting warrants based on information provided by other officers).

The court also acknowledges the parties' arguments about the City's alleged express policy of prohibiting detainees from accessing medication while in lockup unless they are taken to a hospital. Macaluso contends that the City has conceded in another case that the Chicago Police Department is bound by an express "policy that prohibits arrestees from taking medications while in lockup unless they are taken to a hospital." *Ortiz v. City of Chicago*, 656 F.3d 523, 526 (7th Cir. 2011). In response, the City asserts that the complete policy provides that arrestees who require medicine must be transported to an approved medical facility in a timely manner so "[i]f either the individual officers or detectives denied Plaintiff medical treatment or the ability to take his medication by taking him to the hospital, the violation was theirs and theirs alone." (Defs.' Reply at 7, Dkt. 31.)

The purported express policy propounded by Macaluso in his response to the motion to dismiss is not grounded in the complaint, which is very broadly worded and does not even hint that Macaluso is basing his *Monell* claim on this theory. A plaintiff may allege facts in a brief in opposition to a motion to dismiss that are consistent with, and expand on, the factual allegations in the complaint. *See Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015); see also *Twombly*, 550 U.S. at 563 ("once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint").

But Macaluso's complaint is devoid of any facts supporting his *Monell* claim. At best, as discussed above, this claim rests on Macaluso's belief that he cannot be the only detainee who failed to receive necessary medications in a timely manner. Macaluso cannot rewrite his complaint in response to the motion to dismiss. The City—and the court—are entitled to a complaint that outlines the factual contours of Macaluso's *Monell* claim. The federal rules do not allow Macaluso to place the City and the court in the untenable position of analyzing the sufficiency of non-existent factual allegations.

The court thus rejects Macaluso's attempt to shore up his complaint with a response memorandum that alleges an alleged express policy of denying medication to detainees. He must replead. *See Dixon v. Ill. Dep't of Cent. Mgmt. Servs.*, No. 14 C 4986, 2015 WL 6701771, at *2 (N.D. Ill. Nov. 3, 2015) (holding that "the preferable route in the Court's view is for plaintiff to file a second amended complaint setting out these allegations"). Accordingly, the portion of Count III alleging a *Monell* claim based on the City's alleged policy or practice of denying detainees medication is dismissed.

**B.      The City's Alleged Policy or Practice of Failing to Properly Train Officers**

In his complaint, Macaluso alleges that "[a]t all times relevant to this Complaint, the Defendant City of Chicago and its police department had interrelated de facto policies, practices, and/or customs which included, inter alia: the failure to properly train, supervise, discipline, transfer, monitor, counsel, and otherwise order or control police officers to allow arrestees/detainees with serious medical needs access to necessary medication." (Compl. ¶ 41, Dkt. 1) The City maintains that Macaluso has not provided any specifics about its training regimen or any factual allegations that support an inference that a systemic problem with training exists.

It is unclear if Macaluso has abandoned his failure-to-train claim as he did not address this issue in his response to the motion to dismiss. Regardless, any such claim is deficient. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompsomm,* 131 S.Ct. 1350, 1359 (2011). Courts routinely dismiss conclusory failure-to-train claims. *See Maglaya v. Kuminga,* No. 14 C 3619, 2015 WL 4624884, at *5 (N.D. Ill. Aug. 3, 2015) ("plaintiffs' claim of improper police training is a factually-unsupported, boilerplate allegation that cannot survive a motion to dismiss"); *Hill v. City of Chicago*, No. 13 C 4847, 2014 WL 1978407, at *7 (N.D. Ill. May 14, 2014) ("allegations of the City's failure to train and supervise are vague and broad, without sufficient details to support the existence of a custom or policy."); *Kowalski v. Cnty. of Dupage, Ill.*, No. 2013 CV 526, 2013 WL 4027049, at *2 (N.D. Ill. Aug. 7, 2013) (holding that an allegation that defendant municipality failed to train and supervise its police officers was unsupported and therefore insufficient to state a *Monell* claim).

Macaluso's *Monell* claim based on the City's alleged failure to train contains no specifics. It is pure boilerplate. Accordingly, the remaining portion of Count III is dismissed. In light of the dismissal of Count III, the court will not consider the City's alternative argument that Count III is deficient because it does not adequately allege that Macaluso suffered an injury that rises to the level of constitutional harm.

### IV. CONCLUSION

For the reasons set forth above, the City's motion to dismiss Count III [17] is granted. The court will allow Macaluso an opportunity to replead his *Monell* claims. Consistent with this order and counsel's Rule 11 obligations, Macaluso may file a second amended complaint by December 1, 2015. By December 22, 2015, the City shall answer or otherwise plead in response

to Count III if it is amended. By this date, the City must also answer the remaining counts as it did not do so when it moved to dismiss Count III. A status hearing is set for January 6, 2015.



Date:   November 12, 2015                        /s/
                                          Joan B. Gottschall
/cc                                       United States District Judge