IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

STEVEN MACALUSO,                      )
                                      )
            Plaintiff,                )
                                      )        Case No. 15 cv 1739
      vs.                             )
                                      )
CITY OF CHICAGO,                      )
a municipal corporation,              )        Judge: Hon. Joan B. Gottschall
DETECTIVE JOSEPH STRUCK,              )
DETECTIVE PAMELA CHILDS,              )
OFFICER J.L. TRACY,                   )        Magistrate Judge: Hon. Sidney Schenkier
OFFICER A.F. MUNIZZI,                 )
OFFICER DAVID ALEGRE,                 )
OFFICER STEWART BLOURN,               )
OFFICER CEDRIC CAMPBELL,              )
City of Chicago police officers,      )
JANET MORRIS,                         )
                                      )
                  Defendants.         )

## THIRD AMENDED COMPLAINT

Jurisdiction/Venue

1.     This incident occurred on or about February 4, 2015 in Will and Cook Counties,

Illinois.

2.     The jurisdiction of this Court is invoked pursuant to the Civil Rights Act, 42

U.S.C. § 1983, § 1988, the judicial code 28 U.S.C. § 1331 and § 1343(a); the Constitution of the

United States, 42 U.S.C. § 12132 (the Americans with Disabilities Act); pendent jurisdiction, as

provided under U.S.C. § 1367(a), and §2-209(a)(2) of the Illinois long-arm statute (with respect

to Defendant Morris).

3.     Venue is proper under 28 U.S.C. § 1391(b)(2). On information and belief, all of

the events giving rise to the claims asserted herein occurred within the district.  On information

and belief, the City of Chicago Defendant officers all reside within the district.  On Information

and belief, Defendant Janet Morris resides in Madison, Wisconsin.

Parties

4.      The Plaintiff, Steven Macaluso, is a resident of the Will County, Illinois, located in the Northern District of Illinois.

5.      The Plaintiff is physically disabled, having experienced a stroke in July of 2013; he suffers from a variety of medical ailments and physical disabilities, including but not limited to, diabetes, heart disease, kidney disease, eye disease and neuropathy, among others.

6.      Mr. Macaluso is a "brittle diabetic" who must check his blood sugar seven times per day and requires five to seven daily injections of Humalog insulin to keep his blood sugar in check. He also requires daily doses of an immunosuppressant in order to prevent rejection of a transplanted kidney, among other prescribed medications for other conditions.

7.      Defendant City of Chicago is a municipal corporation and, at all times relevant to this Complaint, it was the principal employer of the Defendant Joseph Struck ("Defendant Struck"), Defendant Pamela Childs ("Defendant Childs"),  Officer J.L. Tracy ("Defendant Tracy"), Officer A.F. Munizzi ("Defendant Munizzi"), Officer David Alegre ("Defendant Alegre"), Officer Stewart Blourn ("Defendant Blourn") and Officer Cedric Campbell ("Defendant Campbell"), who were acting under color of law and in the scope of their employment with Defendant City Chicago as duly sworn police officers.

Facts

8.      On or about February 4, 2015, as the Plaintiff was inside the Will County Courthouse, exiting a divorce proceeding where he was appearing *pro se*, Defendants Tracy and Munizzi (together the "First Defendant Officers"), arrested the Plaintiff.

9.      The First Defendant Officers identified themselves as members of the Chicago

Police Department Fugitive Task Force team.

10.     In arresting the Plaintiff, the First Defendant Officers placed handcuffs on the Plaintiff, thus restricting his freedom of movement.  While in the Will County Courthouse parking lot, the Plaintiff told the First Defendant Officers that the handcuffs were too tight and causing him pain, and that he recently had hand surgery.  The First Defendant Officers ignored the Plaintiff and refused to loosen his handcuffs, causing unnecessary pain and suffering.  These handcuffs remained on the Plaintiff for at least an hour before they were finally removed at the Chicago police station.

11.     Before being transported, and during the transport, the Plaintiff alerted the First Defendant Officers to his various serious medical conditions and physical disabilities that required a daily medication regimen.  Although the First Defendant Officers retrieved blood sugar testing materials from Plaintiff's car in the Will County Courthouse parking lot, as well as an empty insulin pen (they left a full insulin pen in Plaintiff's car), the First Defendant Officers did not allow the Plaintiff to use said materials, and would not retrieve additional required medications from the Plaintiff's home, even though they knew this refusal would expose the Plaintiff to a serious health risk.

12.     Following the arrest, the First Defendant Officers transported the Plaintiff to Area 2 Chicago Police Headquarters, where he was locked in a room for several hours.  The Plaintiff requested that he be administered his medications, but these requests were ignored.

13.      The Plaintiff knocked on the door requesting medical assistance and to use the bathroom, but he was ignored for several hours by one or more Chicago police officers.

14.     Several hours later, Defendant Struck entered the room. The Plaintiff told Defendant Struck about his immediate and serious medical issues (including but not limited to

his recent hand surgery, kidney disease, history of stroke, eye disease, diabetes, heart disease and neuropathy), that he needed his various medications, that he needed to keep hydrated because of his diabetes, that he needed food, that he could not hold his urine without serious health exposure, and that, because of his serious medical issues, he needed food and drink and needed to use the restroom. The Plaintiff also notified Defendant Struck that he needed to receive his medications. The Plaintiff also requested his attorney.

15.     Defendant Struck denied the Plaintiff access to his attorney, access to medical care, access to the restroom, access to the hospital, and did not give him any food. Defendant Struck finally provided the Plaintiff with approximately six ounces of water in a small cup that the Plaintiff drank. However, Defendant Struck continued to deny the Plaintiff's request to use the bathroom, and thus the Plaintiff was forced to urinate into that same small cup since Defendant Struck would not allow the Plaintiff access to the restroom.

16.     Several more hours passed, and the Plaintiff remained illegally detained, suffering from his various medical ailments, and in desperate need of medical assistance, food and more water. At some point, Defendant Childs (whom the Plaintiff made aware of all of Plaintiff's serious and urgent medical ailments – but who ignored Plaintiff) moved the Plaintiff to another room. Once there, the Plaintiff once again asked Defendant Struck and Defendant Childs for an attorney, and for medical attention, food and water, all of which were denied.

17.     Even though Defendants Tracy and Munizzi and Defendants Struck and Childs knew the Plaintiff found himself in a serious medical situation that needed immediate medical attention, these officers refused to afford Plaintiff access to his desperately needed insulin and medications. This was due to these officers' deliberately indifferent acts. At no time while the Plaintiff was at the police station was he allowed to take any medication, including insulin.

4

18.     Time passed and Defendant David Alegre and Defendant Stewart Blourn (together the "Second Defendant Officers"), handcuffed the Plaintiff, put him in leg shackles, and transported the Plaintiff to the hospital (the Plaintiff was actually transported to two hospitals but the first one did not have his medications so the Plaintiff will only refer to one hospital visit).  The Plaintiff told the Second Defendant Officers that they placed the handcuffs on him too tightly, that the handcuffs were hurting him, and that he had recent hand surgery, but the Second Defendant Officers refused to loosen the handcuffs, causing unnecessary pain and suffering.

19.     Once at the hospital, the Plaintiff received some medical care, food and water, and there he was finally able to take some of his prescription medications, but not all of them. The inability for the Plaintiff to take all of his medication caused him to needlessly suffer, and amounted to deliberate indifference.

20.     While at the hospital, the Plaintiff again told the Second Defendant Officers that he was experiencing pain and numbness because his handcuffs were too tight.  However, the Second Defendant Officers again refused to un-handcuff the Plaintiff or loosen his cuffs for a prolonged period of time.

21.     After leaving the hospital, the Second Defendant Officers put the Plaintiff in the back seat of a police vehicle. Second Defendant Officers failed to secure Plaintiff with a seatbelt. The Plaintiff remained handcuffed with his arms behind his back and his legs shackled while in the back seat of the squad car. Plaintiff made the officers aware of how uncomfortable and unsafe it was to transport him in this manner.

22.     Shortly thereafter, the squad car the Plaintiff was riding in, driven by Defendant Alegre, was in a car accident involving Defendant Morris and a third vehicle; the Plaintiff, who

did not have his seat belt on, and who was still handcuffed and shackled, first was jarred backward, then went flying forward, directly into the metal divider in the squad car in a classic "whiplash" type of action. The Plaintiff, injured and bloodied (his head hit the metal divider), was transported back to the hospital by ambulance, all the while remaining handcuffed and shackled.

23. Defendant Campbell accompanied the Plaintiff back to the hospital. The Plaintiff explained to Defendant Campbell that his handcuffs were too tightly fastened, but Defendant Officer Cedric Campbell refused to loosen the cuffs, causing unnecessary pain and suffering. The Plaintiff also made Defendant Campbell aware of his recent hand surgery and of his pain and discomfort. Defendant Campbell eventually briefly removed a cuff so that the Plaintiff could blow his nose, but then refastened the cuffs as tightly as before.

24. Several hours later, without explanation, a Chicago police officer told the Plaintiff he was no longer under arrest and was free to leave from the hospital. After enduring approximately 14 hours of detention and abuse at the hands of the Defendants, the Plaintiff was left stranded in the middle of the night with no money or means to get home in a Chicago neighborhood that was foreign to him.

25. Ultimately, the Plaintiff was required to call his elderly mother in the middle of the night to have a taxi arrange for his transportation home.

26. The Plaintiff has suffered extreme physical and emotional pain and suffering as a result of this incident, including but not limited to head and neck pain, bruising, migraines, nerve damage, lacerations, pain and discomfort to his wrists, diminished function and weakness of the wrists and hands, diminished sensation, stress-related symptoms, damaged tissue requiring surgery, an infection and/or impetigo, and colitis, as well as pecuniary damages.

Furthermore, as a result of the incidents described in this complaint Plaintiff has suffered from anxiety, stress, and panic attacks, for which he has been prescribed medication and psychotherapy.

27. Specifically, regarding the Plaintiff's wrist injuries, the Plaintiff suffered swelling, bruising, numbness and nerve damage – these symptoms have required numerous medical appointments, cortisone injections and surgery.

### COUNT I – 42 U.S.C. § 1983
### Deliberate Indifference
(Plaintiff v. Defendant Tracy, Defendant Munizzi, Defendant Struck, Defendant Childs)

28. Each paragraph of this Complaint is restated fully herein.

29. As described above, while the Plaintiff was held by Defendants Tracy, Munizzi, Struck and Childs, said Defendants they failed to provide him with necessary medical attention.

30. As a result of the unjustified and unconstitutional conduct of the above-mentioned Defendants, the Plaintiff suffered injuries, described more fully above.

31. In this manner, the conduct of the above-mentioned Defendants violated the Fourteenth Amendment to the United States Constitution in that it was objectively unreasonable and deliberately indifferent to the Plaintiff's objectively serious medical needs.

32. The misconduct described in this Count was undertaken with malice, willfulness, and deliberate indifference to the rights of others.

33. The actions of the above-mentioned Defendants proximately caused the injuries suffered by the Plaintiff.

### COUNT II– 42 U.S.C. §1983
### Excessive Force/Failure to Intervene to Prevent Excessive Force
(Plaintiff v. Defendants Munizzi, Tracy, Alegre, Blourn, and Campbell)

34. Each paragraph of this Complaint is fully restated herein.

35.     The acts of the First Defendant Officers, the Second Defendant Officers, and Defendant Officer Campbell, in refusing to loosen the Plaintiff's handcuffs, after the Plaintiff repeatedly put them on notice of his recent hand surgery and the pain and numbness he was experiencing, violated the Plaintiff's rights under the Fourth Amendment to the United States Constitution to be secure in his person against unreasonable seizures and thus violated 42 U.S.C. §1983.

36.     The acts of the First Defendant Officers, the Second Defendant Officers, and Defendant Officer Campbell, in failing to prevent said abuse, despite each having the opportunity and duty to do so, violated the Plaintiff's rights under the Fourth Amendment to the United States Constitution to be secure in his person against unreasonable seizures and thus violated 42 U.S.C. §1983.

37.     The aforementioned actions of the First Defendant Officers, the Second Defendant Officers, and Defendant Officer Campbell, were the direct and proximate cause of the violation of the Plaintiff's Fourth Amendment rights and his injuries, including but not limited to the damages described above.

### COUNT III
### Violation of the American with Disabilities Act ("ADA")
### (against Defendant City of Chicago)

38. Each of the above paragraphs setting forth the factual allegations is incorporated as if fully restated herein.

39.     Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132.

40.     The ADA requires public entities to provide reasonable accommodations to qualified individuals with disabilities to enable them to benefit from the service and participate in the program or activity.

41.     The Plaintiff is a qualified individual with a disability pursuant to the Americans with Disabilities Act because his disabilities substantially affect major life activities.

42.     By failing to provide the Plaintiff with the reasonable accommodation of allowing him to take his medication, and for necessary food and water, as requested by the Plaintiff while he was in custody, Defendant City of Chicago discriminated against the Plaintiff in violation of the Americans with Disabilities Act.

43.     Defendant City of Chicago's conduct (acting through one or more of its agent police officers) was intentional and deliberately indifferent to the Plaintiff's federally protected rights.

44.     As a result of Defendants' unlawful actions, the Plaintiff suffered injuries, described more fully above.

### COUNT IV – STATE LAW CLAIM
**Battery**
(Plaintiff v. Defendant City of Chicago)

45.     Each paragraph of this Complaint is fully restated herein.

46.     One or more City of Chicago police officers, including but not necessarily limited to the Defendants named in this suit, knowingly and without legal justification, caused bodily harm to the Plaintiff when they refused to loosen his handcuffs, despite knowing the Plaintiff was in pain, was suffering from various medical conditions and was disabled, and had recently had surgery on his hands.

47.     As described more fully above, the conduct of the individual Defendants, acting

under color of law and within the scope of their employment with Defendant City of Chicago, constituted unjustified, harmful, and offensive physical contact, and proximately caused the Plaintiff's injuries.

48.     The misconduct described in this Count was objectively unreasonable and undertaken intentionally, with malice, willfully and wantonly, and/or with reckless or willful indifference to the Plaintiff's rights.

## COUNT V – STATE LAW CLAIM
### Negligence or Alternatively Willful and Wanton Misconduct
(Plaintiff v. Defendant City of Chicago)

49.     Each paragraph of this Complaint is fully restated herein.

50.     Defendants Alegre and Blourn were transporting the Plaintiff and not enforcing the law at the time that they refused to place handcuffs on the Plaintiff, despite his request to do so and his inability to do so himself.

51.     These officers, acting in the course and scope of their employment with Defendant City of Chicago, negligently and/or willfully and wantonly failed to secure the Plaintiff with a seat belt before his accident, and thus proximately caused the Plaintiff's injuries and/or exacerbated his injuries.

52.     The misconduct described in this Count was objectively unreasonable and undertaken intentionally, with malice, willfully and wantonly, and/or with reckless or willful indifference to the Plaintiff's rights.

## COUNT VI – STATE LAW CLAIM
### Negligence
(Plaintiff v. Defendant Morris)[1]

53.     Each paragraph of this Complaint is fully restated herein.

---

[1] Default judgment was been entered against Defendant Morris on July 18, 2016, pursuant to the Plaintiff's motion (Dkt. 102).

54.     Defendant Morris failed to exercise objectively reasonable care while driving in the proximity of the police vehicle controlled by Defendant Officer 3 and 4; she rear-ended a private vehicle which, in turn, rear-ended the police vehicle while it was stopped at a red light, and thus proximately caused the Plaintiff's injuries and/or exacerbated his injuries.

## COUNT VII – STATE LAW CLAIM
### *Respondeat Superior*

55.     Each paragraph of this Complaint is fully restated herein.

56.     In committing the acts in alleged in the preceding paragraphs, each of the individual Defendants were acting as an agent or employee of the Defendant City of Chicago, and were working in the course and scope of their employment and under color of law.

57.     Defendant City of Chicago is therefore liable as principle for all state law torts committed by its agents.

## COUNT VIII – STATE LAW CLAIM
### Indemnification

58.     Each paragraph of this Complaint is fully restated herein.

59.     In Illinois, public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

60.     Defendant City of Chicago is the indemnifying entity for the actions of the individual Defendants described herein who took their actions while under color of law and in the course and scope of their employment with the City of Chicago.

### Request for Relief

The Plaintiff respectfully requests that the Court enter judgment in his favor and against the Defendants, award compensatory damages and attorneys' fees and costs against all Defendants, award punitive damages against the Defendant Officers in their individual

capacities, and grant any other equitable relief this Court deems just and appropriate, such as remedial measures to modify its policies to conform with the ADA and the United States Constitution.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Respectfully submitted,

By: s/ Richard Dvorak
Richard Dvorak,
Attorney for the Plaintiff.

Richard Dvorak
DVORAK LAW OFFICES, LLC
6262 Kingery Highway, Suite 305
Willowbrook, IL 60527
(312) 593-7146 (p)
(312) 873-3869 (f)
richard.dvorak@civilrightsdefenders.com

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on January 19, 2017, the foregoing document was served upon counsel of record, via the Court's electronic filing system.

s/Richard Dvorak
Richard Dvorak